**United States Extradition Treaty With Belgium**
**104-7**
April 27, 1987

---

BELGIUM

EXTRADITION TREATY WITH BELGIUM

TREATY DOC. 104-7

April 27, 1987, Date-Signed

STATUS:
[*1] PENDING: June 12, 1995. Treaty was read the first time and, together with the accompanying papers,
referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

MESSAGE FROM THE PRESIDENT OF THE UNITED STATES

TRANSMITTING THE EXTRADITION TREATY BETWEEN THE UNITED STATES OF AMERICA AND THE KINGDOM
OF BELGIUM SIGNED AT BRUSSELS ON APRIL 27, 1987

TEXT:
104TH CONGRESS

SENATE

LETTER OF TRANSMITTAL

THE WHITE HOUSE, June 9, 1995.
To the Senate of the United States:

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Extradition Treaty Between the United States of America and the Kingdom of Belgium signed at Brussels on
April 27, 1987. Also transmitted for the information of the Senate is the report of the Department of State
with respect to the Treaty.

This Treaty is designed to update and standardize the conditions and procedures for extradition between the
United States and Belgium. Most significantly, it substitutes a dual-criminality clause for the current list of
extraditable offenses, thereby expanding the number of crimes for which extradition can be granted. The



Treaty also provides a legal [*2] basis for temporarily surrendering prisoners to stand trial for crimes against the laws of the Requesting State.

The provisions in this Treaty follow generally the form and content of extradition treaties recently concluded by the United States. Upon entry into force, it will supersede the Treaty for the Mutual Extradition of Fugitives from Justice Between the United States and the Kingdom of Belgium, signed at Washington on October 26, 1901, and the Supplementary Extradition Conventions to the Extradition Convention of October 26, 1901, signed at Washington on June 20, 1935, and at Brussels on November 14, 1963.

This Treaty will make a significant contribution to international cooperation in law enforcement. I recommend that the Senate give early and favorable consideration to the Treaty and give its advice and consent to ratification.

WILLIAM J. CLINTON.

LETTER OF SUBMITTAL

DEPARTMENT OF STATE,

Washington, May 1, 1995.
The President,
The White House.

THE PRESIDENT: I have the honor to submit to you the Extradition Treaty between the United States of America and the Kingdom of Belgium (the "Treaty"), signed at Brussels on April 27, 1987. I recommend that the Treaty be [*3] transmitted to the Senate for its advice and consent to ratification. I am submitting to you separately the Supplementary Treaty on Extradition between the United States of America and the Kingdom of Belgium to Promote the Repression of Terrorism, signed at Brussels on March 17, 1987 (the "Supplementary Treaty"), and am recommending that the Supplementary Treaty also be transmitted to the Senate for advice and consent to ratification.

The Treaty follows generally the form and content of extradition treaties recently concluded by the United States. It represents a concerted effort by the Department of State and the Department of Justice to modernize the legal tools available for the extradition of serious offenders, including narcotics

traffickers.

Upon entry into force, this Treaty will supersede the Treaty for the Mutual Extradition of Fugitives from Justice, signed at Washington on October 26, 1901 (the "1901 Treaty"), and the Supplementary Extradition Conventions signed at Washington on June 20, 1935, and at Brussels on November 14, 1963 (the "1935 and 1963 Supplements").

Article 1 obligates each Party to extradite to the other, pursuant to the provisions of the Treaty, any person [*4] wanted for prosecution or for the imposition or enforcement of a sentence in respect of an offense described in Article 2.

In Article 2, the Parties agree that an offense punishable by both parties by imprisonment or other form of detention for more than one year, or by a more severe penalty shall be extraditable. Article 2 also provides that attempts and conspiracies to commit these offenses, and participation in the commission of the offenses, are extraditable. Inclusion of a dual-criminality clause rather than a list of offenses covered by the Treaty obviates the need to renegotiate or supplement the Treaty as offenses become punishable under the laws of both Parties. The Article further provides that in determining whether an offense is covered under the Treaty, the offense shall be considered an extraditable offense whether or not the laws in the Contracting Parties place the offenses within the same category of offenses or describe the offense by the same terminology.

Article 2 also permits extradition for offenses which are punishable by less than one year's imprisonment, if extradition has been granted for a more serious extraditable offense specified in the request, and all [*5] other requirements of extradition have been met. Article 2(6) provides that extradition shall not be granted if the prosecution of the offense or the execution of the penalty has become barred by lapse of time under the law of the Requested State.

Article 3 provides that surrender may be refused on the grounds that the person sought is a national of the requested Party, but that each Party's Executive Authority--in the case of the United States, the Secretary of State--shall have the power to extradite its nationals, if, in its discretion, it deems extradition appropriate. The Article provides that in cases in which extradition is so refused, the Requesting State may request that the case be submitted to the competent authorities of the Requested State for prosecution.

Article 4 incorporates a political offense exception to the obligation to extradite. Article 4(1) states generally that extradition shall not be granted for political offenses. Article 4(2) expressly excludes from the reach of the political offense exception several categories of offenses, including the following:

(i) a murder or other criminal act directed against the person of a Head of State of one of the Contracting [*6] Parties, or a member of the Head of State's family;

(ii) the attempt to commit one of the offenses described above or participation in the commission of those offenses; and

(iii) an "association of wrongdoers" formed to commit any of the offenses described above under the laws of Belgium, or a conspiracy to commit any such offense under the laws of the United States.

Article 4(3) provides that extradition shall not be granted if the executive authority of the Requested State determines that the request was politically motivated. Article 4(4) provides that the executive authority of the Requested State can refuse extradition for an offense under military law which is not an offense under ordinary criminal law.

Article 4(5) provides that if the Supplementary Treaty is in force, the provisions of that treaty shall apply if there is a conflict between its provisions and those of Articles 4(1) through 4(4). As discussed earlier, the Supplementary Treaty limits the application of the political offense exception with respect to specified criminal acts that are typically committed by terrorists.

Article 5 bars extradition when the person sought has been convicted or acquitted in the Requested [*7] State for the same offense, but does not bar extradition if the competent authorities in the Requested State have declined to prosecute or have decided to discontinue criminal proceedings.

Under Article 6, when an offense for which surrender is sought is punishable by death under the laws of the Requesting State and is not so punishable under the laws of the Requested State, the Requested State may refuse extradition unless the Requesting State provides assurances that the death penalty will not be carried out. This Article also provides that the executive authority of the Requested State may refuse extradition for humanitarian reasons pursuant to its domestic law.

Articles 7-9 address the procedures by which extradition is to be accomplished. Article 7 describes the documents that are required to support a request for extradition. Article 8 establishes the procedures under which documents submitted pursuant to Article 7 shall be received and admitted into evidence in the Requested State. Article 9 provides that all documents submitted by the Requesting State shall be translated into the language, or one of the official languages, of the Requested State.

Article 10 provides for the [*8] provisional arrest and detention of a fugitive for no more than 75 days pending receipt by the executive authority of the requested State of a fully documented extradition request in conformity with Article 7. Article 7 explicitly provides that the discharge of a fugitive from custody pursuant to this Article does not prejudice subsequent re-arrest and extradition upon later delivery of the extradition request and supporting documents.

Article 11 specifies the procedures to govern the surrender and return of fugitive offenders. The Requested State is required promptly to notify the Requesting State of its decision on extradition and, if denied in whole or in part, to provide an explanation.

If the request for extradition is granted, the fugitive must be removed from the territory of the Requested State within the time prescribed by the law of the Requested State.

Article 12 provides that if a person is being prosecuted or is serving a sentence in the Requested State for a different offense, that State may (a) defer surrender until the proceedings are concluded and the sentence served, or (b) temporarily surrender the person to the Requesting State solely for the purpose of prosecution. [*9]

Article 13 sets forth a non-exhaustive list of factors to be considered by the Requested State in determining to which State to surrender a person sought by more than one State.

Article 14 provides for the seizure and surrender to the Requesting State of all property related to the offense for which extradition is requested. This obligation, however, is subject to the rights of third parties.

Article 15 expressly incorporates into the Treaty the rule of speciality. It provides that a person extradited under the Treaty may not be detained, tried, or punished for an offense other than that for which extradition has been granted, unless the person leaves the territory of the Requesting State after extradition and voluntarily returns to it; the person does not leave the territory of the Requesting State within 15 days of the day on which that person is free to leave; or the person voluntarily consents.

Article 16 permits surrender without further proceedings if the person sought agrees to surrender in

accordance with the laws of the Requested State. It further provides that the rule of speciality in Article 15 shall not apply to such transfers.

Article 17 governs the transit through the [*10] territory of one State of a person being surrendered to the other State by a third party.

Article 18 contains provisions on representation and expenses that are similar to those found in modern extradition treaties. Specifically, the Requested State shall bear ordinary expenses for the legal representation of the Requesting State in any proceedings arising out of a request for extradition. The Requesting State shall bear the expenses related to the translation of documents and the transportation of the person surrendered. Article 18(c) clarifies that neither State shall make any pecuniary claim against the other State arising out of the arrest, detention, examination, or surrender of persons sought under the Treaty.

Article 19 provides that the U.S. Department of Justice and the Ministry of Justice of Belgium may consult with each other directly, or through the facilities of the International Criminal Police Organization, in connection with the processing of individual cases and in furtherance of maintaining and improving procedures for the implementation of the Treaty.

Article 20, like the parallel provision in almost all recent United States extradition treaties, stipulates that [*11] the Treaty is retroactive in that it shall apply to offenses committed before as well as after the date the Treaty enters into force.

Article 21 contains final clauses dealing with the Treaty's entry into force and termination. Paragraph 1 states that the Treaty shall be subject to ratification, and the instruments of ratification shall be exchanged as soon as possible. Paragraph 2 states that the Treaty shall enter into force on the first day of the second month after the exchange of instruments of ratification. Pursuant to paragraph 3, upon entry into force of this Treaty, the Treaty between the Government of the United States of America and the Government of Belgium, signed at Washington on October 26, 1901, and the Supplementary Extradition Conventions, signed at Washington on June 20, 1935, and at Brussels on November 14, 1963, shall cease to have effect. That notwithstanding, the prior treaties will continue to apply to any extradition proceedings in which the extradition documents have already been submitted to the courts of the Requested State at the

time this
Treaty enters into force, except that Article 2 of this Treaty (Extraditable Offenses) will apply to such proceedings. [*12] Paragraph 3 further provides that Articles 12 (Temporary and Deferred Surrender) and 15
(Rule of Speciality) shall apply to persons extraditable under the prior treaties.

Article 22 provides that either State may terminate the Treaty at any time upon written notice to the other
Party; the Treaty would terminate six months after the date of receipt of such notice.

A Technical Analysis explaining in detail the provisions of the treaty is being prepared by the United States
negotiating delegation and will be submitted separately to the Senate Committee on Foreign Relations.

The Department of Justice joins the Department of State in favoring approval of this Treaty by the Senate at
an early date.

Respectfully submitted,

WARREN CHRISTOPHER.

EXTRADITION TREATY

BETWEEN THE UNITED STATES OF AMERICA AND THE KINGDOM OF BELGIUM

THE GOVERNMENT OF THE UNITED STATES OF AMERICA
and
THE GOVERNMENT OF THE KINGDOM OF BELGIUM,

Recalling the Treaty between the Contracting States for the Mutual Extradition of Fugitives from Justice,
signed at Washington, October 26, 1901, and the Supplementary Extradition Conventions between the
Contracting States, signed at Washington, June 20, 1935 and [*13] at Brussels, November 14, 1963;

Noting that both the Government of the United States of America and the Government of Belgium currently
apply the terms of that Treaty; and

Desiring to provide for more effective cooperation between the two States in the suppression of crime, and,
for that purpose, to conclude a new treaty for the extradition of offenders;

Have agreed as follows:

Article 1

Obligation to Extradite

The Contracting States agree to extradite to each other, pursuant to the provisions of this Treaty, persons who have been charged with or found guilty of an extraditable offense within the jurisdiction of one of the
Contracting States.

Article 2

Extraditable Offenses

1. An offense shall be an extraditable offense if it is punishable under the laws in both Contracting States by
deprivation of liberty for a maximum period of more than one year or by a more severe penalty.

2. If extradition is requested for the execution of a sentence, the sentence originally imposed must have
been deprivation of liberty for a period of at least one year or a more severe penalty.

3. The following shall also be an extraditable offense:

(a) an attempt to commit one [*14] of the offenses described in paragraph 1 or the participation as co-author or accomplice of a person who commits or attempts to commit such an offense; or

(b) an <<association of wrongdoers>> formed to commit any of the offenses described in paragraph 1 under the laws of Belgium, or a conspiracy to commit any such offenses as provided by the laws in the United States.

4. In determining whether an offense is an extraditable offense, the Contracting States:

(a) shall consider only the essential elements of the offense punishable under the laws of both states; and

(b) shall not consider as an essential element of an offense punishable in the United States an element such as interstate transportation or use of the mails or of other facilities affecting interstate or foreign commerce, since such an element is for the purpose of establishing jurisdiction in a United States federal court;

(c) shall disregard that the respective laws do not place the offense within the same category of offenses or describe the offense by the same terminology.

5. If extradition has been granted for an extraditable offense or for the execution of a sentence, it shall also

be granted for:

[*15]

(a) any other offense specified in the request even if the latter offense is punishable by less than one year's deprivation of liberty, and

(b) the execution of any other penalty, including a fine, specified in the request for extradition even if the severity of the penalty does not fulfill the requirement of the minimum punishment imposed by paragraph 2,

provided that all other requirements for extradition are met.

6. Extradition shall not be granted if prosecution of the offense or execution of the penalty has been barred by lapse of time under the laws of the Requested State. However, acts constituting an interruption or a suspension of the time-bar in the Requesting State shall be taken into consideration insofar as possible.

Article 3

Nationality

1. Neither Contracting State shall be bound to extradite its own nationals, but the Executive Authority of the United States shall have the power to extradite such persons if, in its discretion, it be deemed proper to do so.

2. If extradition is refused solely on the basis of the nationality of the person sought, the Requested State shall, at the request of the Requesting State, submit the case to its authorities for [*16] prosecution.

Article 4

Political and Military Offenses

1. Extradition shall not be granted if the offense for which extradition is requested is a political offense.

2. For the purposes of this Treaty, the following offenses shall not be considered to be political offenses:

(a) a murder or other criminal act directed against the person of a Head of State of one of the

Contracting States, or of a member of the Head of State's family;

(b) the attempt to commit one of the above-mentioned offenses or the participation as co-author or accomplice of a person who commits or attempts to commit such an offense;

(c) an <<association of wrongdoers>> formed to commit any of the foregoing offenses under the laws of Belgium, or a conspiracy to commit any such offenses as provided by the laws in the United States.

3. Notwithstanding the terms of paragraph 2 of this Article, extradition shall not be granted if the executive authority of the Requested State determines that the request was politically motivated.

4. The executive authority of the Requested State may refuse extradition for offenses under military law which are not offenses under ordinary criminal law.

5. In the [*17] event of a conflict between the provisions of paragraphs 1 through 4 of this article and articles 2 and 3 of the Supplementary Treaty on Extradition between the United States of America and the Kingdom of Belgium to Promote the Repression of Terrorism, signed at Washington on March 17, 1987, the latter provisions shall apply when that treaty is in force.

Article 5

Prior Prosecution

1. Extradition shall not be granted when the person sought has been found guilty, convicted or acquitted in the Requested State for the offense for which extradition is requested.

2. Extradition shall not be precluded by the fact that the authorities in the Requested State have decided not to prosecute the person sought for the acts for which extradition is requested, or to discontinue any criminal proceedings which have been instituted against the person sought for those acts.

Article 6

Humanitarian Considerations

1. If an offense for which extradition is requested is punishable by death in the Requesting State, and if in respect of such offense the death penalty is not provided for by the Requested State or is not normally carried out by it, extradition may be refused, unless the Requesting [*18] State gives such assurances as the Requested State considers sufficient that the death penalty will not be carried out.

2. Notwithstanding the provisions of the present Treaty, the executive authority of the Requested State may refuse extradition for humanitarian reasons pursuant to its domestic law.

Article 7

Extradition Procedures and Required Documents

1. Every request for extradition shall be submitted through the diplomatic channel.

2. Each request shall be supported by:

(a) documents, statements, or other types of information which describe the identity, nationality, and probable location of the person sought;

(b) information describing the facts of the offense and the procedural history of the case;

(c) the text of the law describing the essential elements of the offense for which extradition is requested;

(d) the text of the law describing the punishment for the offense;

(e) the text or a statement of the provisions of law describing any time limit on the prosecution or the service of the sentence; and

(f) the documents, statements, or other types of information specified in paragraph 3 or paragraph 4 of this Article, as applicable.

3. A request [*19] for extradition of a person who is sought for prosecution shall also be supported by:

(a) a copy of the warrant or order of arrest issued by a judge or other competent authority;

(b) a copy of the charging document or, if that does not exist, a report issued by the prosecuting authority setting forth the charges against the person sought; and

(c) such information as would justify the committal for trial of the person if the offense had been committed in the Requested State.

4. A request for extradition relating to a person who has been found guilty of the offense for which extradition is sought shall also be supported by:

(a) a copy of the judgment of conviction or, if such copy is not available, a statement by a judicial authority that the person has been found guilty;

(b) information establishing that the person sought is the person to whom the finding of guilt refers; and

(c) a copy of the sentence imposed, if the person sought has been sentenced, and a statement establishing to what extent the sentence has been carried out; or

(d) if the person has been found guilty of an offense but no sentence has been imposed, a statement affirming that the Requesting [*20] State intends to impose a sentence and a copy of the warrant for the arrest of the person; and

(e) in the case of a person who has been found guilty in absentia, the documents required by paragraph 3.

Article 8

Admissibility of Documents

The documents which accompany an extradition request shall be received and admitted as evidence in
extradition proceedings if:

(a) in the case of a request from the United States of America, they are authenticated by the Department of State of the United States;

(b) in the case of a request from Belgium, they are certified by the diplomatic or consular officer of the United States resident in Belgium, as provided by the extradition laws of the United States; or

(c) they are certified or authenticated in any other manner accepted by the laws of the Requested State.

Article 9

Translation

All documents submitted by the Requesting State shall be translated into the language, or one of the official
languages, of the Requested State.

Article 10

Provisional Arrest

1. In case of urgency, a Contracting State may request the provisional arrest of the person sought pending presentation of the request for extradition. A request for [*21] provisional arrest may be transmitted through the diplomatic channel or directly between the United States Department of Justice and the Ministry
of Justice of Belgium. The facilities of the International Criminal Police Organization (Interpol) may be used to
transmit such a request.

2. The application for provisional arrest shall contain:

(a) a description of the person sought;

(b) the location of the person sought, if known;

(c) a brief statement of the facts of the case, including, if possible, the time and location of the offense;

(d) a description of the laws violated;

(e) a statement of the existence of a warrant of arrest or a finding of guilt or judgment of conviction against the person sought; and

(f) a statement that a request for extradition of the person sought will follow.

3. The Requesting State shall be notified without delay of the disposition of its application and the reasons for
any denial.

4. A person who is provisionally arrested may be discharged from custody upon the expiration of 75 days from
the date of provisional arrest pursuant to this Treaty if the executive authority of the Requested State has
not received the formal request for extradition [*22] and the supporting documents required in Article 7.

5. The fact that the person sought has been discharged from custody pursuant to paragraph 4 of this Article
shall not prejudice the subsequent rearrest and extradition of that person if the extradition request and
supporting documents are delivered at a later date.

Article 11

Decision and Surrender

1. The Requested State shall promptly notify the Requesting State of its decision on the request for extradition.

2. If the request is denied in whole or in part, the Requested State shall provide an explanation of the reasons for the denial. The Requested State shall provide copies of pertinent judicial decisions upon request.

3. If the request for extradition is granted, the authorities of the Contracting States shall agree on the time and place for the surrender of the person sought.

4. If the person sought is not removed from the territory of the Requested State within such time as may be prescribed by the law of that State, he may be discharged from custody, and the Requested State may subsequently refuse extradition for the same offense.

5. The period of time spent in detention in the Requested State pursuant to the [*23] extradition request of the Requesting State shall be subtracted from the period of detention to be served in the Requesting State.
The Contracting States agree to communicate to one another such information relating to the period of detention.

Article 12

Temporary and Deferred Surrender

1. If the extradition request is granted in the case of a person who is being proceeded against or is serving a sentence in the Requested State, the Requested State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution. The person so surrendered shall be kept in custody in the Requesting State and shall be returned to the Requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by agreement of the Contracting States.
The time spent in custody in the territory of the Requesting State will be deducted from the time remaining to be served in the Requested State

2. The Requested State may postpone the surrender of a person who is being prosecuted or who is serving a sentence in that State. The postponement may continue until the prosecution of the person sought has been

concluded and [*24] any sentence has been served.

Article 13

Requests for Extradition Made by Several States

If the Requested State receives requests from the other Contracting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the executive authority of the Requested State shall determine to which State it will surrender the person. In making its decision, the Requested State shall consider all relevant factors, including but not limited to:

(a) whether the requests were made pursuant to treaty;

(b) the place where each offense was committed;

(c) the respective interests of the Requesting States;

(d) the gravity of the offenses;

(e) the nationality of the victim;

(f) the possibility of further extradition between the Requesting States; and

(g) the chronological order in which the requests were received from the Requesting States.

Article 14

Seizure and Surrender of Property

1. To the extent permitted under its law, the Requested State may seize and surrender to the Requesting State all items, including articles, documents, and evidence, connected with the offense in respect of which extradition [*25] is granted. The items mentioned in this Article may be surrendered even when the extradition cannot be effected due to the death, disappearance, or escape of the person sought.

2. The Requested State may condition the surrender of the items upon satisfactory assurances from the Requesting State that the items will be returned to the Requested State as soon as practicable. The Requested State may also defer the surrender of such items if they are needed as evidence in the Requested State.

3. The rights of third parties to such items shall be duly respected.

Article 15

Rule of Speciality

1. A person extradited under this Treaty may not be detained, tried, or punished in the Requesting State
except for:

(a) the offense for which extradition has been granted or a differently denominated offense based on the same facts on which extradition was granted, provided such offense is extraditable or is a lesser included offense;

(b) an offense committed after the extradition of the person; or

(c) an offense for which the executive authority of the Requested State consents to the person's detention, trial, or punishment. For the purpose of this subparagraph:

(i) the Requested [*26] State may require the submission of the documents called for in Article 7; and

(ii) notwithstanding the above, the person extradited may be detained by the Requesting State for 75 days, or for such longer period of time as the Requested State may authorize, while the request is being processed, in which case, the Requesting State shall transmit to the Requested State a statement of the existence of a warrant of arrest or a finding of guilt or judgment of conviction against the person sought.

2. A person extradited under this Treaty may not be extradited to a third State for an offense committed prior
to his surrender unless the surrendering State consents.

3. Paragraphs 1 and 2 of this Article shall not prevent the detention, trial, or punishment of an extradited person, or the extradition of that person to a third State, if:

(a) that person leaves the territory of the Requesting State after extradition and voluntarily returns to it;

(b) that person does not leave the territory of the Requesting State within 15 days of the day on which that person is free to leave; or

(c) if that person voluntarily consents.

Article 16

Waiver of Extradition

If the person sought [*27] consents to surrender to the Requesting State in accordance with the practice of the Requested State, the Requested State may surrender the person as expeditiously as possible without further proceedings and the rule of speciality shall not apply.

Article 17

Transit

1. Either Contracting State may authorize transportation through its territory of a person surrendered to the other State by a third State. A request for transit shall be made through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of Belgium. The facilities of the International Criminal Police Organization (Interpol) may be used to transmit such a request. This request shall contain a description of the person being transported and a brief statement of the facts of the case as well as a confirmation of the existence of the documents referred to in Article 10(2)(e). A person in transit may be detained in custody for 24 hours. Transit may be refused for a national of the Requested State and for a person sought for prosecution or to serve a penalty of deprivation of liberty imposed by the authorities of that State.

2. No authorization for transit is required [*28] when air transportation is used and no landing is scheduled on the territory of the State being transited. If an unscheduled landing occurs, that State may require the request for transit as provided in paragraph 1. That State shall detain the person to be transported until the request is received and the transit is effected, so long as the request is received within 24 hours of the unscheduled landing.

Article 18

Representation and Expenses

1. The Requested State shall advise, assist, appear in court on behalf of the Requesting State, and represent the interests of the Requesting State, in any proceeding arising out of a request for extradition.

2. The Requesting State shall bear the expenses related to the translation of documents and the

transportation of the person surrendered. The Requested State shall pay all other expenses incurred in that
State by reason of the extradition proceedings.

3. Neither State shall make any pecuniary claim against the other State arising out of the arrest, detention, examination, or surrender of persons sought or for representation and litigation expenses incurred under this
treaty.

Article 19

Consultation

The United States Department [*29] of Justice and the Ministry of Justice of Belgium may consult with
each other directly (or through the facilities of Interpol) in connection with the processing of individual cases
and in furtherance of maintaining and improving procedures for the implementation of this Treaty.

Article 20

Application

This Treaty shall apply to offenses committed before as well as after it enters into force.

Article 21

Ratification and Entry into Force

1. This Treaty shall be subject to ratification; the instruments of ratification shall be exchanged at Washington
as soon as possible.

2. This Treaty shall enter into force on the first day of the second month after the exchange of instruments of
ratification.

3. Upon the entry into force of this Treaty, the Treaty between the Government of the United States of
America and the Government of Belgium, signed at Washington on October 26, 1901, and the Supplementary Extradition Conventions signed at Washington on June 20, 1935 and at Brussels on November 14, 1963 shall
cease to have any effect. Nevertheless, the prior treaties shall apply to any extradition proceedings in which
the extradition documents have already been submitted to the courts [*30] of the Requested State at the
time this Treaty enters into force, except that Article 2 of this Treaty shall be applicable to such proceedings.

Articles 12 and 15 of this Treaty shall apply to persons who have been or could be extradited under the prior
treaties.

## Article 22

Termination

Either Contracting State may terminate this Treaty at any time by giving written notice to the other Contracting State. This termination shall be effective six months after the date of such notice.

IN WITNESS WHEREOF, the undersigned, being duly authorized for this purpose, have signed this Treaty.

DONE at Brussels, in duplicate, this 27th day of April 1987, in the English, French and Dutch languages, all
three texts being equally authentic.

For the Government of the United States of America:

For the Government of the Kingdom of Belgium:

---

*The Office of International Affairs* Department of Justice * 1301 New York Ave., NW * Suite 900 * Washington, D.C. 20005*

---

Last updated by usdoj-crm/mls
January 16, 2001