COPY

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 2 7 2003

at ___ o'clock and ___ min. ___M
WALTER A.Y.H. CHINN, CLERK

1    UNITED STATES DISTRICT COURT

2    DISTRICT OF HAWAII

3    --o0o--

4    UNITED STATES OF AMERICA,    )   Case No. MAG-02-0958-KSC
                                  )
5                  Plaintiff,     )   Honolulu, Hawaii
                                  )   Tuesday, March 11, 2003
6         vs.                     )
                                  )   Further Identification
7    SHAWN MICHAEL DOHMEN,        )   Hearing and Further
                                  )   Extradition Hearing
8                  Defendant.     )
     _____ )
9

10              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE KEVIN S.C. CHANG
11            UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13   For Plaintiff:              CONSTANCE HASSELL
                                 U.S. Attorney's Office
14                               300 Ala Moana Blvd., Rm. 6100
                                 Honolulu, HI  96850
15                               (808) 541-2850

16   For Defendant:             MICHAEL A. WEIGHT
                                Office of the Federal Public
17                                 Defenders
                                300 Ala Moana Blvd., Suite 7102
18                              Honolulu, HI  96813
                                (808) 541-2521

19   Court Recorder:           BERNIE BIACAN  UNMONITORED
                               U.S. District Court
20                             300 Ala Moana Blvd., Rm. C-304
                               Honolulu, HI  96850
21                             (808) 541-1300

22   Transcription Service:    V/ARS, Inc.
                               6905 Vicksburg Place
23                             Stockton, CA  95207
                               (209) 472-2433
24

25   Proceedings recorded by electronic sound recording.  Transcript
     produced by transcription service.

ii

1

<u>WITNESS INDEX</u>

2

3  <u>FOR THE PLAINTIFF</u>:          <u>DIRECT</u>   <u>CROSS</u>   <u>REDIRECT</u>   <u>RECROSS</u>   <u>VOIR</u><br><u>DIRE</u>

4  Glenn Ferreira              H-5       W-7       H-9                          W-10
                                                   H-11
5

6  Brent Naluai               H-13      W-17

7  Gervin Miyamoto            H-20      W-24

8

9  LEGEND:    H = Ms. Hassell
              W = Mr. Weight

10

11                     <u>INDEX OF EXHIBITS</u>

12 <u>FOR PLAINTIFF</u>:                              <u>FOR ID</u>     <u>RECEIVED</u>

13 Exhibit 1AA                                                2

14 Exhibit 1A                                                 3

15 Exhibit 1B                                                 4

16 Exhibit 5                                       9          18

17 Exhibit 2                                                  18

18 Exhibit 3                                                  23

19 Exhibit 4                                                  23

20 Exhibit 1C                                                 25

21

22                      --oOo--

23

24

25

1

<u>HONOLULU, HAWAII, TUESDAY, MARCH 11, 2003</u>

THE CLERK:  MAG-02-958-KSG, United States of America vs. Defendant, Shawn Dohmen.  This has been called for a further identification hearing and a further extradition hearing.

Counsel, please state your name for the record.

MS. HASSELL:  Good afternoon, Your Honor.  Constance Hassell for the United States.

THE COURT:  Good afternoon.

MR. WEIGHT:  Michael Weight for the defense.  Mr. Dohmen is here.  We're ready to proceed.

MS. HASSELL:  Your Honor, it's my recollection that when we were last here, Mr. -- through the testimony of Mr. Miyamoto, we had established that the fingerprints taken by the marshals of -- on January 6, 2003, labeled Shawn Dohmen were compared to fingerprints provided by Belgium of a Shawn Dohmen and they were determined to be made by the same person.

I think that the Court wanted some indication that there was some connection between the person who gave the prints at the marshal's and the person that's here in court.  So I'm prepared to go forward on that.

In addition to which there were some questions about the extradition treaty itself, and I've provided Mr. Weight a copy of a -- well, I didn't give him the cover page, but six

2

1   pages of a seven page fax I received from the State Department

2   that is in fact a copy of the actual ratification document

3   which they got out of the vault for me and Xeroxed. So I'd be

4   happy to provide that to the Court also.

5           So in terms of the documents themselves, I've

6   revised the exhibit list and I've handed the clerk a copy of

7   the proposed exhibits for this hearing. And they are pretty

8   much the same as last time with the addition of the facsimile

9   that -- a copy of the facsimile I received from the State

10  Department which I would offer then as Exhibit 1AA.

11          And that -- with that in mind, should I -- would the

12  Court care to have the documents now or call the witness now,

13  whichever is the Court's preference.

14          THE COURT: Mr. Weight, first with regards to 1A,

15  1AA, 1B, and 1C, are there any objections?

16          MR. WEIGHT: Well, 1AA appears to be a copy of the

17  document of ratification by the Senate and the message to the

18  President of the United States confirming that the Senate has

19  in fact ratified the treaty, and Mr. Clinton, the President of

20  the United States, certifying the same.

21          And so I have no objection to that, and that appears

22  to be in order.

23          THE COURT: 1AA is admitted and received.

24          MR. WEIGHT: Now, with respect to -- let's see.

25  Where are we? What's the next question?

3

1    THE COURT:  1B and 1C?

2    MS. HASSELL:  1A?

3    MR. WEIGHT:  The Diplomatic -- 1A, isn't that the --

4    MS. HASSELL:  That's 1AA.

5    MR. WEIGHT:  Okay.  Which one is 1A?  That's the

6    note from Denise Manning?

7    MS. HASSELL:  Correct.

8    MR. WEIGHT:  Let me see the original of that.

9    MS. HASSELL:  I would note for the record that

10   everything has been provided to counsel quite a while ago with

11   the exception of today's document, 1AA.

12   MR. WEIGHT:  Yes.  I have no objection to 1A.

13   THE COURT:  1A is admitted and received.

14   MR. WEIGHT:  Now, Your Honor, 1B contains a lengthy

15   document in a foreign language which I'm guess is probably

16   Flemish.  I don't read or under Flemish.

17   With various and sundry attachments and -- to the

18   translation, Your Honor, because the translation -- a

19   translation is attached which purports to be a translation of

20   the judgment -- the Belgium judgment and the law.  What does

21   this last page purport to be, Ms. Prosecutor?

22   MS. HASSELL:  It appears to be a document in some

23   language unknown to me.  I would note for the record that these

24   very documents were transmitted to Mr. Weight on January 21st.

25   MR. WEIGHT:  And I have no objection to 1B being

4

1    received by the Court.

2              THE COURT:  1B is admitted and received.

3              MR. WEIGHT:  1C appears to be a diplomatic note from

4    the Belgian embassy to United States.  Again it's written in a

5    foreign language, and it contains what purports to be an

6    outline of the case which appears to be a translation according

7    to the footnote at the bottom of -- page.

8              Now attached to that, Your Honor, are what purport

9    to be fingerprints and photographs and I do object to these

10   being admitted into evidence.  I think more foundation is

11   necessary if this is what the Government is using to establish

12   identification.

13             In my experience, unless identification is waived,

14   generally the country that is seeking the person found in the

15   United States sends a representative from that country to the

16   United States to identify the person that is being sought, and

17   we don't have that in this case.  So I object to 1C.

18             THE COURT:  All right.  Let's take up the witness.

19             MS. HASSELL:  Thank you.  The Government would call

20   as its first witness Deputy Marshal -- U.S. Marshal Glenn

21   Ferreira.

22             THE COURT:  Ms. Hassell, could I have 1A, 1AA, and

23   1B?

24             MS. HASSELL:  Oh, sure.

25             THE COURT:  And also 1C?

5

1          MS. HASSELL:  1A, 1AA, and 1B.  And 1C as well?

2          THE COURT:  Yeah.  Thanks.

3          THE CLERK:  Will you raise your right hand.

4          GLENN FERREIRA, PLAINTIFF'S WITNESS, SWORN

5          THE CLERK:  Okay.  Please have a seat.  State your

6   name for the record and spell your last name.

7          THE WITNESS:  Glenn Ferreira, F-e-r-r-e-i-r-a.

8                      DIRECT EXAMINATION

9   BY MS. HASSELL:

10  Q     And your current assignment and duties.

11  A     I am a Deputy U.S. Marshal in the District of Hawaii.

12  I'm the deputy in charge of the warrant section.

13  Q     Okay.  Would part of the warrant section include

14  extradition matters?

15  A     Yes.

16  Q     On January 6, 2003, did you arrest somebody who you know

17  to be Shawn Dohmen?

18  A     Yes.  I assisted another deputy in the arrest.

19  Q     And what were the circumstances of that arrest?

20  A     Well, we had a warrant, and we knew that Shawn Dohmen was

21  going to report to the probation office.  So we went to the

22  lobby of the probation office, sat there, and waited for Shawn

23  to show up.

24         He showed up.  He asked the clerk that he needed to see

25  the probation officer, and the probation officer said what's

6

1    your name, and he said his name out, and then the probation

2    officer -- the clerk said what was your name again, and he said

3    it twice, and that's when myself and Deputy Naluai approached

4    him and identified ourselves and placed him under arrest.

5    Q    When you say him, is the person that you're referring to

6    present in court today?

7    A    Yes.

8    Q    Would you please identify him.

9    A    Shawn Dohmen is the gentleman in the blue shirt sitting

10    at the defense table next to Michael Weight.

11            MS. HASSELL:  May the record reflect the witness has

12    identified the defendant.

13            THE COURT:  Any objections, Mr. Weight.

14            MR. WEIGHT:  No objection.

15            THE COURT:  The record will so reflect.

16    BY MS. HASSELL:

17    Q    What happened after you and your colleague, Mr. Naluai,

18    placed Mr. Dohmen under arrest?

19    A    We took him back to our office -- walked him back to our

20    office and did the normal processing, fingerprinting and

21    personal history.

22    Q    What part did you do?

23    A    I did the fingerprinting.

24    Q    Okay.  And what happened to the fingerprint card after

25    you were finished doing the fingerprinting?

7

A     Since Deputy Naluai is the case agent for that warrant there, I would give everything to him and he would put the packet together.

Q     Okay.

        MS. HASSELL:  Thank you.  I have no further questions.

        THE COURT:  Cross-examination?

        MR. WEIGHT:  Thank you, Your Honor.

                        CROSS-EXAMINATION

BY MR. WEIGHT:

Q     Mr. Ferreira, did you do the actual fingerprinting of the gentleman seated to my immediate left or did someone do it and you were present?

A     No, I did it.

Q     And this was done on some form that the U.S. Marshals use?

A     It's a fingerprinting print card.  I think it has the marshal's address on it.

Q     Okay.  And you haven't looked at that today, I take it?

A     I've seen it, but I didn't look at it today.

Q     Okay.  And the fingerprinting card that you did, did you put your initials or did you sign it or did you do something to it to indicate that you're the one that did the job?

A     You're supposed to put your -- like your badge number on the back or you could sign it.

8

1    Q      And did you do that?

2    A      The front -- I believe I did.  I'm not --

3    Q      But you haven't looked, so you don't know?

4    A      I haven't looked.

5    Q      Okay.

6    A      I think Brent Naluai might have put in the names -- the

7    name and the date of -- and stuff onto the card.

8    Q      So Brent many have done that, but you did --

9    A      I rolled the prints, yes.

10   Q      Okay.  And your name or initials or some identifying

11   feature appears on the original of this card?  It's supposed

12   to?

13   A      It should.

14   Q      Okay.  And you haven't been shown that card today?

15   A      No.

16   Q      Okay.

17          MR. WEIGHT:  I have no other questions.

18          THE COURT:  Ms. Hassell.

19          MS. HASSELL:  I have no further questions.

20          THE COURT:  You have Exhibit 2?

21          MS. HASSELL:  Yes, I have exhibits.

22          THE COURT:  Can you show it to the witness.

23          MS. HASSELL:  May I approach?

24          THE COURT:  Yes.

25   //

9

REDIRECT EXAMINATION

BY MS. HASSELL:

Q      -- do you recognize that Exhibit 2 which is placed in
front of you?

A      Yes.  It's a fingerprint card.

Q      And what does it appear to you to be?

A      It's a copy of a fingerprint card with the name Shawn
Michael Dohmen on it.  It shows date of birth, Social Security
number, height, weight, color hair, color eyes, and the FBI
number.

Q      Okay.

A      And with some prints -- whirl prints.

Q      Okay.  Would there any -- be any way that you would be
able to identify that as the -- a copy of the prints that were
taken, if I were to show you -- we have the --

             MS. HASSELL:  Your Honor, we have the original card
with the next witness if that's going to be a problem.

             THE COURT:  Let's deal with the original.

             MS. HASSELL:  Okay.

             THE COURT:  Do you have the original?

             MS. HASSELL:  If I may approach, Your Honor?

             THE COURT:  We'll mark for identification this as
Government's 5.

             MS. HASSELL:  Okay.  And may I ask also that it be
able to be withdrawn after the hearing and 2 substituted if

10

1    it's found to be --

2         MR. WEIGHT:  May the defense take a look at it, Your

3    Honor?

4         MS. HASSELL:  Sorry.  May the record reflect I'm

5    handing the witness what's been marked as Government's

6    Exhibit 5.

7    BY MS. HASSELL:

8    Q    Does -- do Exhibit 5 and Exhibit -- does Exhibit 2 appear

9    to be a copy Exhibit 5?

10   A    It looks like it.

11        MS. HASSELL:  Your Honor, at this point we would ask

12   to offer Exhibit 2 for identification.

13        THE COURT:  Mr. Weight.

14        MR. WEIGHT:  Voir dire?

15        THE COURT:  Yes.

16                     VOIR DIRE

17   BY MR. WEIGHT:

18   Q    Exhibit 5, does -- that's the original card, Glenn, is

19   that right?

20   A    It appears to be.

21   Q    Take a look at it.  Take a look at the back of it,

22   please.  There appears to be some numerals written down.

23   A    Yes.

24   Q    What are those numbers?

25   A    Looks like 2833.

11

1    Q      Who's 2833?

2    A      I have no idea.

3    Q      It's not you though, is it?

4    A      Not me.

5           MR. WEIGHT:  I object to Exhibit 2, no foundation.

6           THE COURT:  You want to lay some additional

7    foundation, Ms. Hassell?

8           MS. HASSELL:  Yes.  I'd like to ask that it be

9    admitted -- or put on hold until it could be tied up through

10   the next witness, Your Honor, but to continue in that vein just

11   in case there's anything that the deputy can assist with.

12                  REDIRECT EXAMINATION (RESUMED)

13   BY MS. HASSELL:

14   Q      Do you -- is there a list where -- does that appear to be

15   a badge number?  Are badge numbers --

16   A      It might be a badge number.

17   Q      Could it be a time?

18   A      We roll two fingerprint cards and I'm not sure what the

19   other one might say, but I know I rolled the prints.

20   Q      On both cards.

21   A      Yes.  And Brent filled out the info.  Usually that's what

22   happens a lot of times, one person process, one person prints.

23          MS. HASSELL:  Okay.  If I may have just a moment,

24   Your Honor, see if we can get the second card.

25          THE COURT:  Deputy Ferreira, did Deputy Naluai

12

1   complete the information on the fingerprint card in your

2   presence?

3            THE WITNESS:  I believe he might have wrote the

4   first -- just the name down on the top, and then I get the card

5   and I roll the prints, and then after we're done processing

6   them, they'll fill in the height, weight, and all those things.

7   BY MS. HASSELL:

8   Q     And how about the signature person, who witnesses that?

9   A     The person fingerprinting it would witness that.

10  Q     So calling your attention to the signature line on that

11  Exhibit 2 and I guess also 5, were you present when that

12  signature was given?

13  A     Yes.

14  Q     And was it given by the person you've identified as Shawn

15  Dohmen in court?

16  A     Yes.

17  Q     Okay.

18           THE COURT:  And the name that was written on the

19  card by Deputy Naluai was what name?

20           THE WITNESS:  Shawn Michael Dohmen.

21           THE COURT:  Is that the name that appears on

22  Exhibit 5 and Exhibit 2?

23           THE WITNESS:  Yes.

24           THE COURT:  Mr. Weight, any questions based on the

25  Court's questions?

13

1          MR. WEIGHT:  No questions, Your Honor.

2          THE COURT:  Ms. Hassell.

3          MS. HASSELL:  Thank you.  No further questions.

4          Your Honor, we'll call U.S. Deputy Marshal Brent

5    Naluai, please.

6          THE CLERK:  Raise your right hand.

7          BRENT NALUAI, PLAINTIFF'S WITNESS, SWORN

8          THE CLERK:  Okay.  Please have a seat.  State your

9    name for the record and spell your last name.

10          THE WITNESS:  Brent Naluai, N-a-l-u-a-i.

11                      DIRECT EXAMINATION

12    BY MS. HASSELL:

13    Q     What is your occupation and your current assignment?

14    A     I'm with the Department of Justice, U.S. Marshal Service,

15    as a United States Marshal -- a Deputy United States Marshal.

16    Currently I'm with the warrant section.

17    Q     And in connection with your duties, did you arrest a

18    person known to you as Shawn Dohmen on January 6, 2003?

19    A     Yes, I did.

20    Q     What were the circumstances leading up to that arrest?

21    A     On December 27th, yourself brought a provisional warrant

22    down to our office, and I received it at our office.  And I was

23    advised that Mr. Dohmen was going to be released from a halfway

24    house or a home detention facility on January 2nd.

25          And on January 2nd, Deputy Ferreira and I went to the

14

1   address that was provided and Mr. Dohmen was not there.  Later

2   on we found out that Mr. Dohmen had been released that day from

3   Memmahawe (phonetic) to a residence in Haweiakai (phonetic),

4   Lunaluhome (phonetic) Road.

5       And then I spoke with probation officer, Frank Condello

6   (phonetic), and he indicated to me that he had an appointment

7   with Mr. Dohmen on Monday at 9:00 o'clock.  So prior to

8   Mr. Dohmen arriving at about 8:35, 8:40, Deputy Ferreira and I

9   went to the probation office lobby and I spoke with the

10  receptionist and instructed her that an individual by the name

11  of Shawn Dohmen would be coming for an appointment with

12  Mr. Condello.

13      And they communicate via the intercom, and I asked her

14  that if an individual identified himself as Dohmen, wanting to

15  speak with Condello, to ask him to say his name again.

16      After that, Deputy Ferreira and I sat out in the lobby

17  side.  Shortly before 9:00, an individual walked in, depressed

18  the intercom button, and said that he was there for an

19  appointment with Probation Officer Frank at 9:00 o'clock and he

20  said his name Dohmen.

21      And then over the intercom, I heard the receptionist ask

22  what was your name again.  He said Shawn Dohmen.

23      After he did that is when I approached him and asked him

24  to sit down and that's when I placed him under arrest.

25  Q    And the person you're talking about, would you recognize

15

1   him if you were to see him again?

2   A     Yes.

3   Q     If he's present in court, would you please identify him?

4   A     He's seated at defense counsel table to my right with the

5   blue -- light blue shirt.

6             MS. HASSELL:  Record reflect Witness has identified

7   Mr. Dohmen.

8             THE COURT:  Any objections?

9             MR. WEIGHT:  Note for the record I'm wearing a light

10  blue shirt as well, Your Honor.

11            THE COURT:  The record will reflect identification

12  of the defendant by the witness.

13  BY MS. HASSELL:

14  Q     Was there any other indication that you received during

15  the arrest process that indicated Mr. Dohmen's identity?

16  A     Yes.  When we arrested him, he indicated he had his cell

17  phone which I knew according to court policy would be left out

18  front.  So I went to retrieve the cell phone, and banded to the

19  cell phone was a driver's license with the name Shawn Dohmen on

20  it.

21        And I took that back to the processing room --

22  Q     Okay.

23  A     -- when we conducted the processing of Mr. Dohmen.

24  Q     And when you were doing the processing, was that you and

25  Deputy Ferreira?

16

1    A    Yes.

2    Q    Who we -- actually you were here and you heard his

3    testimony.  Could you explain what you did in the processing

4    process.

5    A    When there's two of us, one will do the printing and fill

6    out the paperwork, and one will do the data entry into the

7    computer system, which is what I did.  I did the data entry

8    while Deputy Ferreira printed and filled out some other

9    paperwork needed at the Bureau of Prison facility.

10    Q    Okay.  And let me show you some exhibits, if I may.

11    Showing you what's been marked as the Government's Exhibit

12    No. 2 and No. 5.  Ask if you recognize first of all -- whoops.

13    I'm so sorry -- Exhibit No. 5.

14    A    Yes, I recognize Exhibit No. 5.

15    Q    What does it recognize -- what do you recognize it as?

16    A    As a copy of one of two originals that were --

17    fingerprints that were taken of Mr. Dohmen --

18    Q    Okay.

19    A    -- during the processing.

20    Q    And does it appear to you to be in the substantially the

21    same condition as it was when it was -- excuse me -- when the

22    card was processed and retained by the marshal's office?

23    A    Yes.

24    Q    Calling your --

25    A    With exception of that exhibit tag, yes.

17

1    Q      Yes.  Okay.  Mr. Weight asked a question earlier.  If you

2    wouldn't mind flipping over No. 5 -- Exhibit 5.  I think

3    there's a little notation somewhere.  Do you know what that is?

4    That's a -- I think a four numeral number.

5    A      Yes.  2833.

6    Q      Do you have any idea what that is?

7    A      That's my number.

8    Q      Your badge number?

9    A      Yes.

10   Q      Okay.  Calling your attention now to Exhibit No. 2.

11   A      Um-hmm.

12   Q      Do you recognize that?

13   A      Yes.  It appears to be a Xerox copy of Exhibit No. 5.

14          MS. HASSELL:  Thank you.  No further questions.

15          THE COURT:  Mr. Weight.

16                      CROSS-EXAMINATION

17   BY MR. WEIGHT:

18   Q      Deputy, does the fact that the -- your badge number

19   appears on the back of Government's Exhibit 5 mean that you

20   were the one that printed Mr. Dohmen not --

21   A      No.

22   Q      -- Mr. Ferreira?  It doesn't mean that?

23   A      No.

24   Q      Why are your -- why is your number on there?

25   A      Well, I fill out the card, and when I flipped it over

18

1   just to identify someone that was there in the process, I had

2   put my number on it, but I did not roll the prints myself.  I

3   filled out the other information.

4   Q     Filled out -- you mean the part where the name is written

5   in, the Social Security number, height, weight, date of

6   birth --

7   A     Yes, that's my handwriting.  That's my handwriting, yes.

8   Q     Okay.  So you filled that out.

9   A     Yes.

10  Q     Okay.

11        MR. WEIGHT:  No other questions of this witness,

12  Your Honor.

13        MS. HASSELL:  No further questions.

14        THE COURT:  Are you offering --

15        MS. HASSELL:  And I would offer Exhibit 2 into

16  evidence and hold -- and No. 5 for the purposes of this

17  hearing, and I would later ask that No. 5 be able to be

18  removed.

19        THE COURT:  Any objections, Mr. Weight?

20        MR. WEIGHT:  No objection.

21        THE COURT:  All right.  As noted 2 and 5 are

22  admitted and received.

23        MS. HASSELL:  Your Honor, at the last hearing, we

24  had testimony from Mr. Miyamoto that the fingerprints were

25  determined to be -- that are -- on Exhibit 5 and therefore

19

1   Exhibit No. 2 found to be made by the same person in

2   Government's Exhibit No. 3, and that wasn't -- Mr. Weight had

3   time to go through with that.  I don't know if this is -- if we

4   need to go any further in this.

5           If so -- I mean we do have the print technician

6   here, but I think that the ID has been adequately shown in

7   Mr. Miyamoto's testimony last time combined with the

8   identification -- sight identification and verbal

9   identification of this time.

10          THE COURT:  In an abundance of caution, Ms. Hassell,

11  why don't we call -- recall Mr. Miyamoto because I'm not sure

12  we got --

13          MS. HASSELL:  Okay.

14          THE COURT:  -- all of those facts --

15          MS. HASSELL:  Okay.

16          THE COURT:  -- that you've stated.

17          MS. HASSELL:  Mr. Miyamoto.

18       GERVIN MIYAMOTO, PLAINTIFF'S WITNESS, SWORN

19          THE CLERK:  Okay.  Please have a seat.  State your

20  name for the record and spell your last name.

21          THE WITNESS:  My name is Gervin Miyamoto.  Last name

22  is M-i-y-a-m-o-t-o.  I'm assigned to the U.S. Attorney's

23  Office, District of Hawaii, and in the capacity of Law

24  Enforcement Coordinator.

25  //

20

1                        DIRECT EXAMINATION

2    BY MS. HASSELL:

3    Q      At some time, Mr. Miyamoto, were you also with the

4    Honolulu Police Department?

5    A      Yes, ma'am.

6    Q      Okay.  In connection with this case, were you asked to

7    take a fingerprint card to the Honolulu Police Department for

8    processing?

9    A      Yes.

10   Q      Okay.  Showing you what's been marked -- or what is

11   Exhibit No. 5 --

12              MS. HASSELL:  If I may approach.

13              THE COURT:  Yes.

14   BY MS. HASSELL:

15   Q      -- and No. 2.  Show you Exhibit No. 5 and No. 2 and ask

16   you if you recognize those?

17   A      Yes.

18   Q      What do you recognize them to be?

19   A      Latent fingerprint card, federal latent fingerprint cards

20   and a reproduction of the same.

21   Q      Did you also receive a copy of fingerprints that were

22   provided in materials provided by the Kingdom of Belgium in

23   connection with this case?

24   A      Yes.

25              MS. HASSELL:  If I may approach, Your Honor.

21

1           THE COURT:  Yes.

2    BY MS. HASSELL:

3    Q      Showing you what's been marked as Exhibit 3 for

4    identification.  I ask if you recognize that document.

5    A      Yes.

6    Q      What do you recognize it to be?

7    A      It's similar to the one that you provided me.

8    Q      Okay.  What did you do with -- well, when you say

9    similar, what did you do with that document or one similar to

10   it and Exhibit 5?

11   A      Basically I was instructed to obtain latent comparison.

12   So I went down to the police department at -- on Friday,

13   February 28th, at about 4:15 in the afternoon, and I located

14   Ms. Kamaka (phonetic) at the Honolulu Police Department

15   identification section.

16   Q      Was that Kamaka or Kamakana (phonetic)?

17   A      Kamakana.  I'm sorry.

18   Q      Okay.  And in your prior work at HPD, have you known

19   Ms. Kamanaka (phonetic) as part of the force there?

20   A      Yes.  I've known Ms. Kamakana.

21   Q      And has she been associated with the crime lab and the

22   fingerprint area --

23   A      Yes.

24   Q      -- while you were there?

25   A      Yes.

22

1   Q     Okay.  And what did you do with those two exhibits?

2   A     I provided her the exhibits and asked her to compare the

3   two.  And she went to her desk.  I was a few feet away from her

4   desk, and she compared them.

5   Q     Okay.  And did she come up to a conclusion -- come to a

6   conclusion regarding the prints that are on Exhibit 5 with a

7   copy in Exhibit 2 and those provided on Exhibit 3?

8   A     Based on her technical review, she said they was one in

9   the same.

10          MR. WEIGHT:  Objection.  Objection, Your Honor.

11   This clearly calls for hearsay.  The witness is here.  Let the

12   witness speak for herself.

13          THE COURT:  Overruled.

14          MS. HASSELL:  I'm going to ask to approach, Your

15   Honor, with Exhibit No. 4.

16          THE COURT:  Yes.

17   BY MS. HASSELL:

18   Q     Mr. Miyamoto, I'm handing you Exhibit No. 4.  Ask if you

19   recognize that.

20   A     Yes, ma'am.

21   Q     It's a document.  I think I can say that.  What does it

22   appear to you to be?

23   A     It's a document signed by Ms. Kamakana in reference to

24   the prints -- the compared prints to be one in the same.

25   Q     And is the conclusion that you remember her telling you

23

1   also on that document?

2   A     Yes, ma'am.

3   Q     Okay.  Thank you.

4         MS. HASSELL:  Your Honor, at this time, I would

5   offer Exhibits 3 and 4.

6         THE COURT:  Mr. Weight?

7         MR. WEIGHT:  Objection to Government's Exhibit 3.

8   No foundation.

9         Exhibit 4, is that the fingerprint card?  Which one

10  is the --

11        MS. HASSELL:  No. 4 --

12        MR. WEIGHT:  You have it listed as a fingerprint

13  card, but which one?  We have 2 and 5 up there so far.

14        MS. HASSELL:  No. 4 --

15        MR. WEIGHT:  Which one is 4?  Show me No. 4.

16        MS. HASSELL:  If I may approach, Your Honor?

17        THE COURT:  Yes.

18        MS. HASSELL:  May the record reflect I'm showing

19  Mr. Weight Exhibit No. 4 for identification which I showed him

20  before I approached the witness.

21        MR. WEIGHT:  I object.  The witness, Stephanie

22  Kamakana is here.  She can testify.  Otherwise this is

23  redundant so far as Mr. Naluai has already testified with

24  reference to receiving the fingerprint card from the marshals.

25        THE COURT:  Over objection, Government's 3 and 4 are

24

1  admitted and received.

2          MS. HASSELL:  Thank you.  Your Honor, if I may just

3  double-check with the clerk on the exhibits, make sure what's

4  in and what isn't.

5          I have no further questions of Mr. Miyamoto.

6          THE COURT:  Mr. Weight?

7                      CROSS-EXAMINATION

8  BY MR. WEIGHT:

9  Q     Mr. Miyamoto, you're not a fingerprint expert, are you?

10 A     No, sir.

11 Q     And with reference to Government's Exhibit 3, that is the

12 so-called Belgium prints, this appears to be a Xerox copy --

13 A     A reproduction.

14 Q     -- of an original.  So -- but that's not the original, is

15 it?

16 A     Yes.

17 Q     And you have no independent personal knowledge with

18 reference to anything regarding how those prints were taken,

19 where, or when, do you?

20 A     Yes, sir.

21 Q     Yes, you don't?

22 A     I don't.

23         MR. WEIGHT:  Thank you.  I have no further

24 questions.  Renew my objection with reference to Government's

25 Exhibit 3.

25

1          THE COURT:  For the record, the renewed objections

2    are overruled.

3          Ms. Hassell.

4          MS. HASSELL:  Thank you.  No further questions of

5    Mr. Miyamoto.

6          THE COURT:  Thank you.

7          MS. HASSELL:  Your Honor, on the -- I think what we

8    have in evidence at this point are Exhibits 1A, 1AA, 1B, 2, 3,

9    4, and 5.  I believe the Court has 1C and I renew my offer of

10   1C into evidence.  And I would offer as a -- as an officer of

11   the court, I will say that that is the copy that I got in my

12   package from the State Department on the Belgian extradition.

13         THE COURT:  Mr. Weight, any objections to 1C?

14         MR. WEIGHT:  Yes, Your Honor.  Same objection.  No

15   foundation.

16         THE COURT:  Okay.  The objection is noted.  1C is

17   admitted and received.

18         MS. HASSELL:  Thank you, Your Honor.  I believe with

19   the receipt of the documents, Your Honor, and the testimony of

20   the witnesses today, we would conclude that the

21   extraditability -- I've been practicing that word.  I don't

22   know if I've gotten it yet -- extraditability of Mr. Dohmen has

23   been shown and we would ask that the Court so find.

24         THE COURT:  Mr. Weight.

25         MR. WEIGHT:  Your Honor, I think that the Government

26

1   has failed in its proof with respect to the identification of

2   the Belgian prints.  We don't have any testimony with reference

3   to how they were taken, where they were taken, when they were

4   taken.

5         We have a diplomatic note, and we have them attached

6   to a diplomatic note, and that's about it.  There is

7   insufficient foundation from which I submit a reasonable Court

8   could reach a reasonable conclusion that these prints certify

9   that this particular defendant is wanted in Belgium based on

10  these prints.

11        And therefore I would again renew my objection to

12  the admission of 1C and Government's Exhibit 3, and I would

13  urge Your Honor to find that the Government has failed in its

14  proof with reference extraditability of Mr. Dohmen and

15  identification.  On that basis, we submit.

16        THE COURT:  Mr. Weight, you don't intend to offer

17  any evidence?

18        MR. WEIGHT:  That is correct, Your Honor.

19        THE COURT:  The Court then having considered all of

20  the evidence admitted at this hearing and taking judicial

21  notice of the information and documents on file in this

22  Magistrate number, further noting that hearsay evidence is

23  admissible at an extradition hearing, finds that the Government

24  has presented sufficient evidence which establishes probable

25  cause to believe that the defendant, Shawn Dohmen, is the

27

1    person or fugitive named in the complaint filed on

2    December 27th, 2002; further that the offense charged in this

3    case is an extraditable crime under the extradition treaty

4    between the United States of America and the Kingdom of

5    Belgium, specifically Article 2 of the treaty.

6            Therefore pursuant to 18 United States Code

7    Section 3184, the Court finds that it has jurisdiction to

8    certify extradition of the defendant, Shawn Dohmen, and again

9    find and conclude that the defendant is the person named in the

10   complaint and that the offense charged is an extraditable crime

11   under the United States-Belgium treaty and therefore certify to

12   the Secretary of State that there is sufficient evidence to

13   sustain the charge under the treaty and that the defendant is

14   extraditable in conformance with the treaty.

15           You prepare the order?

16           MS. HASSELL:  Yes, Your Honor.

17           THE COURT:  Thank you very much, counsel.

18           MS. HASSELL:  Thank you.

19           THE CLERK:  All rise.

20       (Whereupon, the hearing in the above-entitled matter was

21   adjourned.)

22               CERTIFICATE
         I certify that the foregoing is a correct transcript from
23   the electronic sound recording of the proceedings in the above-
     entitled matter.
24   *Mary C. Clark*                          March 26, 2003

25   Mary C. Clark, Transcriber, AAERT CERT*00214